**John HERD and Gloria Herd, Plaintiffs-Appellants,**

v.

**William R. INGLE and Netta Ingle, husband and wife, and Billy Ingle, Defendants.**

**Citizens Bank of Ava, Garnishee-Respondent.**

**No. 14238.**

Missouri Court of Appeals, Southern District, Division Two.

July 31, 1986.

W. Price Harned, Johnson & Sanders, Mountain Home, Ark., for plaintiffs-appellants.

William J. Hart, P. Glen Smith, Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for garnishee-respondent.

PREWITT, Chief Judge.

Plaintiffs received a judgment against defendants for $10,385.19. They attempted to collect the amount awarded through garnishing a bank account of defendants William R. Ingle and Billy Ingle at Citizens Bank of Ava. Claiming a right of "set off" because of a promissory note held by the bank and signed by William R. Ingle and Netta Ingle, the bank denied that it was obligated to pay under the garnishment. This contention was upheld by the trial court. Plaintiffs appeal.

■ A bank's right to set-off is a well established principle. The relationship of a bank and its depositor is based on contract and creates a debtor and creditor relationship. *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169, 173 (Mo.App.1982); 5A Michie, Banks and Banking, ch. 9, § 1, p. 1 (repl. vol. 1983); 5 Zollmann, Banks and Banking, § 3332, p. 321 (1936). See also 10 Am.Jur.2d Banks § 339, p. 301 (1963). Because of this relationship, a bank may apply its customer's bank account to reduce the customer's debt to the bank, in the same way that another debtor might assert set-off as a defense to an action on the debt. *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d 710, 712–713 (Mo.App. 1978). See also 6 Am.Jur.2d Attachment and Garnishment § 374, p. 822 (1963); Annot., "Garnishment of bank deposit as affected by bank's right, or waiver of right, to set off depositor's indebtedness to it against deposit or apply deposit to such indebtedness, 106 A.L.R. 62 (1937), supplemented at 110 A.L.R. 1268 (1937).

■ A creditor proceeding by a writ of garnishment can assert no greater rights against the garnishee than the defendant could have claimed. If the defendant could not have compelled the garnishee to pay over the proceeds, plaintiff cannot receive them by way of garnishment. *Wolfley v. Wooten*, 220 Mo.App. 668, 293 S.W. 73, 76 (1927).

Plaintiffs received their judgment on February 7, 1984. A writ of garnishment was served on the cashier of the Citizens Bank on April 2, 1984. The balance of the bank account at the time of service of the writ of garnishment is not shown in the record. However, a checking account statement of the account from March 9, 1984 through and including April 13, 1984 shows that on April 2, 1984, a deposit of $19,016.10 was made and the balance of the

account at the end of the statement period was $19,873.74.

The bank's cashier testified that four checks were paid from the account from April 2 through April 13. The statement of the account indicates that eight were paid during that period. A statement of the account from April 13, 1984, through May 11, 1984, reflects that from April 18, 1984, through May 7, 1984, nine checks were paid. The balance on May 7, 1984, was $4.08 and on May 11, 1984, a minus $2.92. The last of the "checks" shown on the latter statement was for $18,711.64. The record shows, and the parties agree, that this amount was not a check, but was the result of the Citizens Bank's applying the account toward the balance of a loan that it had made to William R. Ingle and Netta Ingle, evidenced by a promissory note.

The principal amount of the note was $41,173.04. It was dated December 6, 1983, and due December 6, 1984. Payment of the note was secured by a security agreement covering hogs, vehicles, and farm equipment. The note provided that at the holder's option it would become immediately due and be payable "without notice" upon any breach in the terms of the security agreement. The security agreement provided that the assets it covered were to be kept at the Ingle's farm near Thornfield, Missouri. A vice-president of the Citizens Bank testified that "one of our bank people went and inspected the hogs or inspected the farm on May the 2nd of 1984 and found all of the hogs had been sold in March." How that person learned that the hogs had been sold was not explained. The vice-president further testified that the vehicles and farm equipment were in poor condition and two tractors listed in the security agreement "had been mortgaged at both the bank in Gainesville and with our bank."

On May 7, 1984, the bank sent a letter to William and Netta Ingle, the body of which stated:

"On May 7, 1984 Citizens Bank of Ava exercised its set-off right against your account # 0200409421 for principal and interest payment on your loan account # 84732."

The trial court determined that Citizens Bank's set-off was valid based on an agreement contained upon the back of the "Checking Account Agreement" signed by William R. Ingle and Billy Ingle when the bank account was opened on December 11, 1981. That document contained the following language:

SET–OFF—Each person signing this form, and each legal entity listed in the Name of Account, acknowledges and agrees that we may, at any time, set-off against any balance in this account, any debt owed to us by any person having the right of withdrawal (except where such right clearly and only arises in a representative capacity), and any debt owed to us by any legal entity listed in the Name of Account, subject to any limit on the right of withdrawal from this account by such person or legal entity. A debt includes but is not limited to an obligation owing to us whether direct or indirect, secured or unsecured, absolute or contingent, joint or several, due or to become due, whether now existing or hereafter acquired by us, and wherever payable, and without regard to whether arising as maker, drawer, endorser, or guarantor.

Plaintiffs contend that the attempt at set-off is invalid because the note was not due and was not treated as due until well after the service of the writ of garnishment and during that period the bank had continued to pay checks drawn on the account. Among the cases relied on by appellants is *Prince v. West End Installation Service*, 575 S.W.2d 831 (Mo.App.1978), where the court states at 832:

Established law in Missouri is that a bank may apply its customers' deposits to reduce the customers' loans from the bank "as they become due." *Adelstein v. Jefferson Bank & Trust Co.*, 377 S.W.2d 247[1] (Mo.1964). A bank cannot however defeat a garnishment on the ground that the depositor owes the bank money on a note not yet due. *Iler v.*

*Midland National Bank,* 69 Mo.App. 64[1] (1897). On the date of service of the writ, a garnishee must have an enforceable cause of action against its depositor.

The bank contends that the note was due because the security agreement was violated as the hogs had been sold, certain items of collateral were in poor condition, and certain items of collateral had been mortgaged to others. The bank claims that this breach occurred in March of 1984 and "[o]nce the default occurred and the Note became immediately due and payable, the Respondent-Garnishee could, without notice, set-off or charge the balance of the Note against any bank account or accounts maintained by the Defendants." Respondent bank contends that its right to a set-off "became vested prior to the issuance and the service of the Writ of Garnishment" and was thus superior to plaintiffs' right to the bank account.

Among the cases cited by the bank are *Brown v. Maguire's Real Estate Agency,* 343 Mo. 336, 121 S.W.2d 754 (1938), and *Barsco, Inc. v. H.W.W., Inc.,* 346 So.2d 134 (Fla.App.1977). In *Brown,* the note held by a bank provided that it would have a lien upon any bank account of the debtor and that the note, at the option of the bank, shall mature and become due and payable upon any writ of attachment, garnishment, or execution issued against the maker of the note. The St. Louis Court of Appeals followed the principle that "an indebtedness unmatured at the time of service of a garnishment may not be set off against the garnishment", and held that as the bank's option had not been exercised before the garnishment was served the bank's attempt at set-off was improper. 101 S.W.2d 41, 49–50 (Mo.App.1937). On certification by a dissenting judge, the Supreme Court reached a different result. The court held that although the note was not due or treated as such until after service of the garnishment, the right to set-off existed at the time of the garnishment and set-off was therefore proper. 121 S.W.2d at 760–761.

Here, it is obvious that respondent did not deem the note due, or if so, was not overly concerned with its collection until sometime after the garnishment as it continued to honor checks drawn on the account. Although by paying the checks the bank might have waived its right to apply the bank account to its indebtedness, see *Prudential Loan and Trust Co. v. Metzler,* 66 Or. 224, 133 P. 1191 (1913); 6 Am. Jur.2d, supra, p. 823; Annot., supra, 106 A.L.R. at 70, and its supplement, 110 A.L.R. at 1269, such a waiver is not a theory briefed here and apparently was not a theory presented at trial. Nor do plaintiffs contend that they are entitled to the amount of the checks paid. Thus, these questions are not before us.

Plaintiffs contend that the note was not due because the bank had not deemed "itself insecure" before the service of the garnishment. However, the bank did not contend that the loan was due under that provision of the note, but under the provision that at the bank's option the note was due upon any default in the provisions of the security agreement. There was undisputed evidence that the security agreement had been violated. Appellants cite the language in *Ralston Purina Co. v. King,* 101 S.W.2d 734 (Mo.App.1937), stating at 735, "An option to declare a debt due must have been exercised before garnishment in order to be available as a set-off." We believe that case should be distinguished from the case here. *Ralston* was not a bank account case and there was no note, security instrument, or other document which gave the right to set-off without notice. Rather, *Ralston* involved an apparent attempt by the garnishee to allow the defendant to stay in debt, but at the same time to withdraw his salary regardless of the indebtedness. 101 S.W.2d at 735. In addition, even if *Ralston* cannot be distinguished, this court is bound by *Brown v. Maguire's Real Estate Agency, supra.*

■ If the note was due, then the bank had the right to a set-off even if at the time of the garnishment they did not know that conditions existed making it due. Al-

though some states indicate that to have a right of set-off, a bank holding a note whose stated due date has not been reached must take affirmative action to treat it as due before the service of a writ of garnishment, see *Barsco, Inc. v. H.W.W., Inc., supra,* 346 So.2d at 135, there is no such requirement in Missouri. See *Brown,* supra, 121 S.W.2d at 761.

The facts in *Barsco* are similar to those here. It followed *Brown* and held that a bank was entitled to exercise a right of set-off where a violation of the security agreement caused the note to become due before its stated maturity date, although before the service of the garnishment the bank had not treated the note as due. In the present case, a breach of the provisions of the note had occurred. Therefore, at the time of service of the writ of garnishment, the bank had the right to apply the account to the note and this right was not lost by the bank not taking action to declare the note due before receiving service of the garnishment.

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.