S. T. STOCKHAM, J. E. HIETT, J. A. WEDDINGTON, R. L. NEWTON, and GEORGE HUTCHINSON, Appellants, v. LEWIS LEACH and O. W. FRUITS, Respondents.

Springfield Court of Appeals, March 11, 1922.

1. **APPEAL AND ERROR:** Replevin: Verdict in Replevin for Possession of Saw Mill for Plaintiffs, and for Damages on the Taking for Defendants, Held Contradictory, and Ground for Reversal of Entire Judgment. In an action for replevin of saw mill, in which defendants claimed damages on account of wrongful taking and preventing their carrying out a contract with plaintiffs to use the saw mill in sawing timber, a verdict giving plaintiffs possession of the saw mill, and for damages for defendants for the wrongful taking, was contradictory, and requires reversal of the entire judgment based thereon.

2. **SET-OFF AND COUNTERCLAIM:** Claim not Existing at Time of Filing Suit Cannot be Used as Counterclaim. Under Revised Statutes 1919, section 1233, providing for filing a counterclaim existing at commencement of the action, in an action to replevin a saw

mill purchased of plaintiffs, and on which they had a mortgage, damages suffered by defendants because taking the saw mill prevented fulfilling a contract to saw timber for plaintiffs, cannot be the basis of a counterclaim.

3. **CHATTEL MORTGAGES: Cannot be Foreclosed as Long as Mortgagor Complies with Contract Made in Connection Therewith.** Where a note for saw mill, due one day after date, to be paid by sawing timber, and a chattel mortgage to the seller of the saw mill, and a contract to saw timber for the seller, were a part of one transaction, the right of the seller to take possession of the saw mill in a replevin suit, and to foreclose the mortgage, depended not on the fact that the note was due, but on whether the accompanying contract concerning sawing the timber was being fulfilled.

4. **REPLEVIN: Where Right of Defendants to Damages Depended on Wrongful Taking of Property, They Must Deny Plaintiffs' Right to Possession.** Where plaintiffs sold defendants a saw mill, for which they gave them a note secured by a mortgage, the plaintiffs after replevying the mill, sold it under the mortgage, defendants' right to damages in the replevin suit depended on the wrongful taking of the saw mill, and, to have any standing in court, they must deny plaintiffs' right to possession.

5. **CHATTEL MORTGAGE: Damages for Conversion is Value of Property Taken.** In replevin suit where plaintiffs had sold the property under a chattel mortgage, if their acts amounted to conversion, defendants would have the right to have the value of the property assessed as on the date it was taken.

6. **———: Measure of Damages for Conversion of Mortgaged Property by Mortgagee is Value of Interest of Mortgagor Therein.** In a replevin suit for saw mill on which plaintiffs had a mortgage, under which they sold it, the measure of damages due the mortgagees is the difference between the full value of the property at the time it was taken and the amount the mortgagees owed on the note given for the purchase price.

7. **CONTRACTS: Contract of Doubtful Meaning Will be Given Construction Making it Reasonable and Fair Between Parties.** A contract of doubtful meaning will be given a construction, which makes it reasonable and fair between the parties, to the end that one party will not have an unfair advantage over the other.

8. **REPLEVIN: Answer Claiming Damages in Replevin, Held not a Counterclaim.** In an action of replevin of a saw mill, where defendants claimed damages on account of being prevented from carrying out a contract with plaintiffs to saw certain timber, des-

ignation of the claim as a counterclaim was incorrect, since it was an answer in replevin containing a count for damages based on breach of contract.

9. ———: **Where Answer Makes no Claim to Property, Judgment for its Value Cannot be Given.** In replevin, where the answer makes no claim to the property, and no demand for its return, a judgment for defendants for the value of the property cannot be given, and the only judgment that can be rendered in their favor is for return of the property and damages sustained from the wrongful taking.

10. ———: **Verdict Held not in Proper Form.** In a replevin suit for a saw mill, where possession was taken under the writ, a verdict that "We, the jury, find the issues for the plaintiffs for the return of the saw mill, all equipment thereto belonging," was improper in form.

Appeal from Carter County Circuit Court.—*Hon. E. P. Doris,* Judge.

REVERSED AND REMANDED.

*C. P. Turley, John L. Moore,* and *W. J. Orr* for appellants.

(1) Since 1844 down to yesterday it has been the law of this State that after condition broken the mortgagee in a chattle mortgage becomes the absolute owner of and is entitled to the possession of the property mortgaged. Robinson v. Campbell, 8 Mo. 365; Citator to date. (2) The item allowed by the jury to the defendants was not a matter within the jurisdiction of the trial court in this replevin suit. Ely v. Sutton, 177 Mo. App. 556; Donohoe v. McAleer, 37 Mo. 312.

*W. N. Evans* and *Gary H. Yount* for respondents.

(1) Where plaintiff claims damages for detention in replevin, defendants may plead and prove a counterclaim arising out of the same transaction against such claim for damages. Cobey on Replevin (2 Ed.), sec. 795; 34 Cyc., page 1417; Harvesting Co. v. Hill, 104 Mo. App.

544; Howard v. Haas, 131 Mo. App. 499; Small v. Speece, 131 Mo. App. 513. (2) Before the court can review the alleged errors the attention of the trial court must be called thereto in a motion for a new trial. State ex rel. v. Woods, 243 Mo. 25; State v. Marshall, 36 Mo. 400; Long v. Towl, 41 Mo. 398; Maplegreen Co. v. Trust Co., 237 Mo. 365; Collins v. Saunders, 46 Mo. 389.

COX, P. J.—Replevin for possession of a saw mill and damages for misuse. Counterclaim for damages filed as an offset by defendants. Verdict for plaintiff for possession of the saw mill with no damages assessed and a verdict for defendants on their counterclaim for $589.97. Judgment in plaintiffs' favor for possession of the saw mill and a money judgment in defendants' favor against plaintiff for $589.97. Defendants have not appealed from the judgment in plaintiffs' favor for possession of the property. Plaintiffs have appealed from the money judgment against them.

The controversy in this case grew out of the following facts: Plaintiffs were the owners of 400 acres of timber land in Carter County and were desirous of having the timber sawed into railroad cross ties and lumber. They sold to defendants the saw mill involved in this action and in payment therefor took their note for $1150 due one day after date with a chattel mortgage on the saw mill as security. At the same time and as a part of the same transaction, the plaintiffs and defendants entered into a contract in writing by the terms of which defendants bound themselves to saw the lumber on the 400 acres of land owned by plaintiffs into ties and lumber and plaintiffs were to pay them $8 per thousand feet therefor. The mortgage on the saw mill contained the following clause: "The parties of the second part agree that the party of the first part shall hold back the sum of Two Dollars ($2) per thousand (1000) of all lumber cut until the party of the first part shall receive in full payment of One-Thousand-One-Hundred-Fifty Dollars ($1150) and interest, the price of said mill fur-

nished by the said party of the first part.'' The written contract by which plaintiffs employed defendants to saw the timber on their land contained the same clause. Defendants had sawed 71,834 feet prior to January 5, 1921, and plaintiffs had paid therefor $514.64 and had applied $60.03 on the note. This paid for all that was sawed at that time. Plaintiffs on January 5, 1921, filed this suit in replevin for possession of the mill. The property was taken away from the possession of the defendants under the writ of replevin and delivered to plaintiffs. Afterward and before trial, the plaintiffs advertised and sold the mill under the chattel mortgage.

The petition was in the usual form alleging that plaintiffs were the owners and entitled to the possession of the property; that it was wrongfully withheld by defendant and had been damaged by misuse and asked judgment for possession of the property and damages.

The answer set up the fact that defendants had purchased a certain saw mill from plaintiffs and had executed their note therefor due one day after date and had executed a chattel mortgage to secure same, then pleaded that at the same time and as a part of the same transaction, the contract by which they were employed to saw the timber on plaintiff's land was executed and pleaded a breach of that contract by plaintiffs in that they had on January 5, 1921, taken possession of the mill and converted same to their own use without giving defendants a reasonable time in which to saw the timber on the 400 acres of land described in the contract and alleged that by reason of that breach and the defendants being prevented thereby from sawing the remainder of the timber, they lost profits amounting to $2400, and asked judgment for that amount. The answer did not ask a return of the property nor an assessment of its value.

Plaintiffs filed a reply admitting a sale of the saw mill to the defendants and the execution of the contract pleaded by defendants as a part of the same transaction, then alleged that defendants had failed to make pay-

ments on the note of $2, per thousand of lumber sawed and that defendants had failed to manufacture the lumber with dispatch and diligence and denied every other allegation of the answer.

It will be observed that by the pleadings, the parties have agreed that the sale of the mill and the execution of the note and chattel mortgage and the execution of the contract by which defendants had agreed to saw the timber on plaintiffs' land was all one transaction. The proof showed the same thing. The jury returned two verdicts. One for the plaintiffs as follows: "We, the jury, find the issues for the plaintiffs for the return of the saw mill all equipment thereto belonging" signed by ten jurors. The other verdict was for defendants and is as follows: "We, the jury, find the issues for the defendants and assess their damages at $589.97," signed by the same ten jurors. Neither of these verdicts can stand for they are directly opposed to each other. If plaintiff had the right to recover possession of the property, then defendants could recover nothing: If defendants were entitled to recover damages then plaintiff was not entitled to possession of the property. For the defects in these verdicts, the entire judgment will have to be reversed.

In view of another trial, we deem it best to express our views on what appears to us to be the issues attempted to be raised by the answer and reply. This record presents a peculiar situation. The petition is in the usual form and prays judgment for recovery of the property and damages. The answer does not deny plaintiffs' right to recover possession of the property, but alleges that they had bought a certain saw mill from plaintiffs and given a note for the purchase price due one day after date, and a chattel mortgage on the mill to secure the same, then pleads the contract by which they were employed to saw timber for plaintiffs, and a breach of that contract by plaintiffs and asks for damages on that account. Defendants do not allege that the mill they bought from plaintiffs and on which

they had given the chattel mortgage, was the same mill that plaintiffs had taken from them; neither do they charge that plaintiffs took the mill under the writ of replevin in this case. The evidence, however, showed both of these facts.

Defendants' claim for damages cannot be upheld as a counterclaim in this case as they attempted to assert it because it did not exist at the time the suit of plaintiffs was filed against them. A counterclaim cannot be based on a right of action that accrued to a defendant after suit was begun against him. [Statutes 1919, sec. 1233; Meinche v. Brocksiesk, 14 Mo. App. 319; Todd v. Crutsinger, 30 Mo. App. 145; Reppy v. Reppy, 46 Mo. 571; Iler v. National Bank, 69 Mo. App. 64; Second Baptist Church v. Beecham, 180 S. W. 1065; Jansen v. Dolan, 157 Mo. App. 32, 137 S. W. 27.] If defendants had any right of recovery for damages as claimed in their answer it was as special damages resulting from a wrongful taking of the mill by plaintiffs in this suit and not as a counterclaim.

We think the note and chattel mortgage and the contract to saw the timber was all one transaction as stated by the parties in their pleadings in this case. That being true the plaintiffs' right to take possession of the property and foreclose their mortgage depended on whether the terms of the mortgage had been violated in some respect other than by a failure to pay the note, or whether the defendants were complying with the terms of the contract in sawing the timber. By the contract the plaintiffs had agreed that the note, which on its face was due one day after date, should be paid by sawing lumber and making payments out of what was coming to them for that service, and after having done that they could not foreclose the mortgage as long as defendants were complying with the contract.

The evidence shows that plaintiffs gave bond and took possession of the property and prior to the trial had sold it under the chattel mortgage. The property was therefore gone and could not be produced either at or

after the trial. Under the facts as shown in this record defendants' right to claim any damages depended on the taking of the property by plaintiffs being wrongful, and to have any standing in court they must deny plaintiffs' right to possession of the property. If the right of plaintiffs to possession is denied and defendants should win on that issue, then, since plaintiffs had sold the property their acts amounted to conversion and defendants would have the right to have the value of the property assessed as of the date it was taken. [Willison v. Smith, 60 Mo. App. 469; Rosentretor v. Brady, 63 Mo. App. 404; Wetsbay v. Milligan, 74 Mo. App. 179, 182; Jones v. Jones, 188 Mo. App. 220, 234, 135 S. W. 227; Forsee v. Zenner, 193 S. W. 975, 979.]

In assessing the value it should be confined to the value of defendants' interest therein, which would mean their interest over and above the amount due on the purchase price, if any. In other words, if plaintiffs' taking of the property was wrongful, then they should be charged with the full value of the property at the time they took it and defendants should be charged with what was still due and unpaid on the note given for the purchase price. If defendants should win as above stated on the question of the right of plaintiffs to possession of the property and could further show that they had been damaged as claimed by not being permitted to finish sawing the lumber they would be entitled to a further credit on that account. All these things should be taken into consideration and a balance struck between the parties and if the balance should be in favor of plaintiffs they would still be entitled to recover although their taking of the property was wrongful, but if the balance should be found to be in defendants' favor then they should recover for that amount. If it should be found that plaintiffs had the right to take possession of the property the defendants could not recover for any damages and there would be no occasion to. strike any balance.

The entire judgment, both in favor of plaintiffs and defendants, is reversed and the cause remanded. *Farrington, J.,* concurs; *Bradley, J.,* concurs in separate opinion.

BRADLEY, J. (concurring).—I concur in the opinion by my associate but herein more definitely express my views. The cause originated in replevin. Defendants answered claiming certain damages. The issues were submitted to a jury, and two verdicts were returned; one for plaintiffs, and one for defendants for $589.97 as damages. From the judgment for damages plaintiffs appealed, but defendants did not appeal from the judgment against them in replevin. The answer sets up a claim for damages for breach of contract. The reply undertakes to answer the defendants' demand for damages. Plaintiffs owned 400 acres of land in Carter county, and wanted the timber cut into lumber and ties. Defendants were saw mill men of some years experience. Plaintiffs on September 15, 1920, sold to defendants a second hand saw mill outfit, and some repairs additional for $1150. Defendants gave their note in payment. The note was dated September 15, and due one day after date. "At the same time, and as a part of said transaction," so say plaintiffs in their reply, a written contract was entered into between the parties which among others contained these provisions: "Parties of the second part agree to take said saw mill and to manufacture the timber of the said party of the first part into something like half and half ties and lumber at eight dollars per thousand feet and ten dollars per thousand feet for all inch lumber in excess of one-half. Party of the first part is to use due diligence and have put and placed on the skids at the mill logs at all times so as not to delay the operation of the mill unless hindered by the weather or other unavoidable conditions. Parties of the second part agree to cut said logs as fast as the weather and other unavoidable conditions will permit.

"Parties of the second part agree that the party of the first part shall hold back the sum of two dollas per

thousand of all·lumber cut until the party of the first part shall have received in full payment the sum of eleven hundred dollars and interest, the price of said mill furnished by the said party of the first part.''

Two days after the execution of the note and contract which were executed September 15, defendants executed a chattel mortgage on the property bought from plaintiffs to secure the note. The mortgage is in the usual form and in addition it contains as a· part of the *condition* clause, the clause above set out from the contract relative to holding back $2 on the thousand feet. It appears from the original bill of exceptions on file here that the mill had to be moved some distance from where it was when plaintiffs bought it, and it was not ready for operation till the latter part of October. Things did not go well, and by January 5, 1921, when this cause was instituted, defendants had not cut but 71,834 feet. The lumber cut amounted $574.67. Plaintiffs advanced to defendants during the time $514.64 to take care of the pay roll, and.applied $60.03 on the note. When the mill was taken under the writ and turned over to plaintiffs they advertised it, and sold it for $500, and credited this amount on the note. Plaintiffs as would appear from their evidence relied on three grounds: (1) That the note was past due; (2) that the property had unreasonably depreciated in value; and (3) that defendants were not cutting lumber ''as fast as the weather and other unavoidable conditions will permit.'' But they went to the jury omitting from their instructions specific reference to the theory that they could recover if the note was overdue. Nearly the whole of the evidence by plaintiffs was directed to the idea that defendants had not cut lumber as rapidly as .they should. The evidence for defendants for the most part was along the same line, and to the effect that they had proceeded as rapidly as possible under the circumstances.

While the mortgage was not actually executed until two days after the note and contract it is plain, and both sides agree, that the whole affair was one and the same

transaction; and each instrument so connected with the other that one could not be separated and have force of itself. It is also plain that plaintiffs cannot recover in replevin merely because the note was past due when the cause was commenced. The note was due before a tap was turned toward moving the mill. The contract provides that "party of the first part (plaintiffs) does buy and deliver to the said parties of the second part (defendants) one saw mill," etc., and that "parties of the second part agree to take *said* saw mill and to manufacture the timber" of plaintiffs into lumber. It further appears in the contract that plaintiffs agreed "to use due diligence and have put and placed on the skids at the mill logs at all times as not to delay the operation of the mill unless hindered by the weather or other unavoidable conditions." Plaintiffs agreed to buy the mill and sell it to defendants, and defendants agreed to take *that* mill and with that mill cut plaintiff's timber. If plaintiff could foreclose for nonpayment when the note fell due then the contract means nothing, except that defendants agreed to do the impossible as did plaintiffs because they agreed to furnish logs on the skids, etc. At the time the note fell due, and it was impossible to have been otherwise, there was neither *mill, log* nor *skids* in the sense in which these terms are used in the contract. Plaintiffs' manager who executed the papers for them testified that the mortgage was made in view of the contract. According to the theory that plaintiffs can recover because the note was overdue they could have proceeded to foreclose, before the ink was dry on the signatures to the mortgage. If the mortgage was "made in view of the contract," it was according to plaintiffs theory here, made to *destroy* and not to *secure.*

The mortgage, note, and contract constituted one contract, so say plaintiffs, the idea that plaintiffs could foreclose because the note was overdue is inconsistent with the terms of the contract, and if foreclosed on that ground could be had, then the contract as a whole gave plaintiffs an unusual and an unfair advantage. A. con-

210 M. A.—27

tract of doubtful meaning will be given a construction which makes it reasonable and fair between the parties to the end that one party will not have an unfair advantage over the other. [Mecartney v. Guardian Trust Co., 274 Mo. 224, 202 S. W. 1131.] There was incorporated into the mortgage a provision whereby plaintiffs were to retain two dollars on the thousand feet of lumber cut until the note for the mill was paid. This clause provided how the note might be paid. As I view this clause plaintiffs can foreclose by establishing either of these facts: (1) That plaintiffs were prohibited by defendants from holding back two dollars on the thousand; (2) that the mortgaged property had unreasonably depreciated in value. So far as appears here, the ground that plaintiffs were prohibited by defendants from holding back the two dollars on the thousand is somewhat dubious, because the whole of the proceeds was in plaintiffs' hands, and if they voluntarily released more than the contract provides they are in no position to complain. It appears also in the record that plaintiffs agreed outside the contract to furnish defendants money ''until they got set up and until they got on their feet.'' The money advanced was on open account so plaintiff's manager testified, and that they applied all of the contract price of the lumber on this account, except the $60.03. Under the written contract plaintiffs could apply two dollars per thousand on the note, but instead they chose to apply practically all on the open account.

The verdicts in this cause mean nothing. The jury found for plaintiffs on the replevin wing and for defendants on their claim for damages. If the taking was wrongful then plaintiffs could not recover, and if not wrongful then defendants could not recover, therefore, the verdicts cannot in reason mean anything, and can have no force and validity under the facts here. The verdict returned for plaintiffs is as follows: ''We the jury find the issues for the plaintiffs for the return of the saw mill all equipment thereto belonging.'' The one returned for defendants: ''We the jury find the issues

for the defendants and assess their damages at $589.97.''
This amount is the balance due on the note after allow-
ing the two credits of $500 and $60.03.  Plaintiffs design-
ate defendants' answer as a counterclaim, and defend-
ants refer to it as a counterclaim.  There is no counter-
claim in the case, and cannot be.  The answer is not
labeled as a counterclaim, but as an answer, and should
have been an answer in replevin where the plaintiff had
taken the property under the writ.  But the answer is
more in the nature of a count for damages based on
breach of contract than anything else.  Where defend-
ant's answer in replevin makes no claim to the property,
and no demand for the return, the only judgment that
can be rendered in his favor is for a return of the prop-
erty and any damages sustained from the wrongful
taking.  In such case a judgment for the value of the
property cannot be given.  [Cable v. Duke, 208 Mo. 557,
106 S. W. 643; Bank of Willow Springs v. Utterman, 184
S. W. (Mo. App.) 1171; Sikes v. Freman, 204 S. W.
(Mo. App.) 948.]  If the cause is retried the answer
should be framed so as to comply with section 2082, Re-
vised Statutes 1919, if defendants desire to avail them-
selves of the remedies there provided.  The verdict for
plaintiffs is not in proper form where possession has
been taken under the writ (Barnes v. Plessner, 137 Mo.
App. 571, 119 S. W. 457; Rogers v. Davis, 194 Mo. App.
378, 184 S. W. 151), but we merely mention this as an-
other irregularity in this cause.

In Shaw v. Richards, 236 S. W. 405, we held that a
verdict, on all fours in inconsistency with the verdicts
here, meant nothing, and remanded the cause on that
ground.